NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | |
|---|---|
| ISOBUNKERS, LLC.<br>　　　　Plaintiff,<br><br>　　　　v.<br><br>BYRAM TOWNSHIP BOARD OF EDUCATION<br>　　　　Defendant | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. O9-cv-00607 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court upon motion for summary judgment by Byram Township Board of Education ("Defendant") pursuant to Fed. R. Civ. P. 56. Pursuant to Fed. R. Civ. P. 78, no oral argument was heard. After considering the submissions of the parties, and based upon the following, it is the decision of this Court that Defendant's motion for summary judgment is **granted** in part and **denied** in part.

I.    BACKGROUND

As was their annual custom, Defendant Byram Township Board of Education solicited bids for the purchase of #2 fuel oil to be delivered to eleven individual schools within the district for the period July 1, 2008 through June 30, 2008. On August 6, 2008, Plaintiff submitted their sealed bid. Although Plaintiff was not the lowest bidder, they were notified by phone on that date that the school board planned to award them the contract. An e-mail memorializing that conversation was

sent by Plaintiff, and received without objection by Defendant also on August 6, 2008. On the very next day, the lowest bidder, Petroleum Traders Corporation, called Defendant to complain that their bid had been rejected, allegedly for non-compliance with the bidding procedure. Petroleum Traders subsequently filed a written complaint with Defendant. On August 13, 2008, Defendant sent an e-mail to all those who had bid on August 6, 2008 informing them that due to the complaint, the bidding process would be repeated, and the results of the August 6th process were void. On August 6th Plaintiff purchased the #2 oil futures required for fulfillment of the contractual obligation it believed itself to have accepted, and upon which it relied. Plaintiff was able to resell the fuel oil contract, but took a loss of approximately $100,000. Plaintiff also avers that it lost expected profit of approximately $200,000 that would have been earned had they been allowed to fulfill the contract as originally bid.

**II.     LEGAL STANDARD**

   A. New Jersey Public School Contracts Law

New Jersey's Public School Contracts Law, N.J.S.A. 18A:18A-4 states in relevant part "[e]very contract for the provision or performance of any goods or services, the cost of which in the aggregate exceeds the bid threshold, shall be awarded only by resolution of the Board of Education to the lowest responsible bidder after public advertising for bids and bidding therefor, except as provided otherwise in this chapter or specifically by any other law." Moreover, N.J.S.A. 18A:18A-40 states "[a]ll board of education contracts for the provision or performance of goods or services shall be in writing." The law further provides in N.J.S.A. 18A:18A-4.5 that "[a]ward of a contract shall be made by resolution of the Board within 60 days of the receipt of the proposals" unless there is consent "for such longer period as may be agreed."

B. Promissory Estoppel

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." *Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington,* 194 N.J. 223, 254, 944 A.2d 1 (2008) (citing *Lobiondo v. O'Callaghan,* 357 N.J.Super. 488, 499, 815 A.2d 1013 (App.Div.2003)).

III. DISCUSSION

A. Contract Claims

The law in New Jersey is clear as to the awarding of contracts to provide goods or services to local school boards. The process begins with a sealed bid, and is only consummated when the school board passes a resolution within sixty days thereafter. Prior to the passage of a resolution, no contract can exist as a matter of law. In the instant case, where Plaintiff was specifically instructed in the bid packet that familiarity with applicable law was incumbent on the bidder,[1] Plaintiff is unequivocally charged with knowledge that no contract could issue without a formal resolution, regardless of any representations as to the expected outcome of that resolution made by the school board's agent. It is for this reason, and not for what Defendant terms "a non-waivable material defect." that the Court holds there to have been no enforceable contract between the parties. Had the losing bidder not protested, and had the board gone on to ratify the contract that ISObunkers believed itself to have been awarded on August 6, 2009, the issue of

---

[1]The section of the bid packet entitled "Instructions to Bidders," contains the following sub-heading, "Compliance With All Laws." In relevant part, it reads "the selected contractor shall keep himself informed of and shall comply with the Federal, State and Local Laws and Ordinances as they apply to the work to be performed and insure compliance." (EXHIBIT B, Byram Township Board of Educatiom Motion for Summary Judgment, ECF Doc. #    )

ISObunkers' notation in the margin of the bid as to the fixed firm price would have been immaterial. There is no reason to apply different logic to invalidate the bid itself after the fact, especially in light of ISObunkers' representation that in previous successful bid submissions, the same or similar language had been included, and the contract awarded without incident. If the defect had not been material in any of the previous contract awards, there is no reason to hold that it suddenly became material and non-waivable just because the losing bidder called Defendant's attention to it.

Since the Court holds that, as a matter of law, no contract was formed, Count II alleging breach of an implied covenant of good faith and fair dealing is also inapplicable, as a matter of law..

B. <u>Promissory Estoppel</u>

As previously stated, there are four necessary elements to a valid claim for promissory estoppel;  (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment.

The evidence as presented suggests that there was a long standing relationship between the parties, and that Plaintiff had previously bid on contracts with Defendant, and had been awarded contracts on several occasions. Based on their previous dealings, there is a material question of fact as to what Plaintiff might reasonably have expected the process to consist of. While, as a matter of law, no actual contract exists between the parties, as a matter of equity, Plaintiff may reasonably be found to have relied on what was understood to be the custom and practice of the school board.  As this Court has previously held in *SGS U.S. Testing Co., Inc. v. Takata Corp.*, 2010 WL 3035742, 8 (D.N.J.) (D.N.J.,2010), ordinarily "course of conduct does not rise to the level of a clear and definite promise." In this case, however, the history of the

parties' dealings coupled with their written correspondence changes that calculus. If, as Plaintiff suggests, the commitment of the school board's agent, either verbally or in an informal writing, had always proved sufficient in the past, and if the actual role of the school board was essentially to rubberstamp the agent's promise, Plaintiff's claim for promissory estoppel may well be meritorious. The Court finds that the e-mail correspondence between Plaintiff and the Business Administrator for Defendant meets the first prong of the test for promissory estoppel, namely a clear and definite promise, without finding that their course of conduct is relevant to anything other than the reasonableness of Plaintiff's reliance, as required in the third prong. Here, the language is clear that Plaintiff, at Defendant's request, sent an e-mail message at 12:04 p.m., only a few hours after the bids had been unsealed and evaluated by Defendant. Plaintiff wrote, "this confirms our agreement today that ISObunkers accepts the award of your No. 2 Fuel Oil Bid at the Firm Fixed Price of $3.9875/gallon." ( *see* ECF Doc. 21-1, Exhibit E of Plaintiff's Brief in Opposition to Motion for Summary Judgment, page ID#217). As previously discussed for other reasons, Defendant's argument that ISObunkers' bid contained a non-waivable material defect is unavailing. Even if there had been a defect in the bid that might have enabled ISObunkers to raise its price before Defendant accepted the bid, that possibility was eliminated by the precise language of the e-mail, wherein ISObunkers agreed to bind itself to the fixed firm price, to its own detrimental reliance. The defect that Defendant alleges did not create an uneven playing field with other bidders; it merely indicated the temporal urgency for ISObunkers to lock in the price as bid. The Court rejects Defendant's conclusion that Plaintiff's additional language placed Plaintiff at an unfair advantage. Plaintiff, in fact, never varied the price as bid. Moreover, Plaintiff reasonably avers that the purpose of the conditional language was not to keep the price open until the board resolution had passed, but only up until the moment it received an oral

commitment that Plaintiff had won the bid. When Plaintiff sent an e-mail to Defendant at 12:04 p.m. on August 6, 2009, the price could no longer be adjusted, and to the extent, *arguendo*, that there was any defect in the bid, it had effectively been cured.

The second prong of the promissory estoppel inquiry, analyzing whether a promise was made with the expectation that the promisee would rely on it, also raises a material issue of fact. On a motion for summary judgment, where the Court must view the facts in the light most favorable to the non-moving party, it appears to the Court that the promisor had every intention of having the promisee rely, and had it not been for the intervening complaint by the losing bidder, a contract would have been ratified by the school board in short order. The intention of Defendant to award the contract and Plaintiff to perform seem, from the record before the Court, unassailable.

The third prong, analyzing the reasonableness of the reliance, is also a question of fact that the Court must view in Plaintiff's favor. The volatility of the oil market, and the need to lock in a fixed price as quickly as possible, is well-documented, and not disputed by Defendant. Once Plaintiff understood by phone call and e-mail that a contract had been presumptively awarded, albeit without the formality of a resolution, it was reasonable for Plaintiff to rely on that, and to go ahead and enter into the necessary fuel oil contracts to insure that it would be able to profit from performance of the contract. The fourth prong, definite and substantial detriment, is also well documented by Plaintiff, at least insofar as its losses related to its attempt to mitigate damages, and the fact that re-selling the contracts on the open and volatile market resulted in an immediate loss of $100,000, even before any discussion of the value of Plaintiff's alleged lost profits.

The Court recognizes that promissory estoppel is not often nor usually imposed on a

public entity such as a school board, but in the interests of fairness, this case proves the exception. As Defendant avers, a major objective of all public bidding statutes has been to promote honesty and integrity of those bidding, and of the system itself. But that objective cuts both ways, and does not entitle the school board, or any public entity, to run roughshod over the good faith efforts of legitimate bidders. Although the Court recognizes that the outcome may be an additional expense to taxpayers, the Court can not ignore the fact that for the integrity of the bidding process to be maintained, trust must be mutual, not unilateral. The bidder must be trustworthy, and honor his commitments, but so must the school board. In a situation such as this, where there is a colorable case that Plaintiff relied, in good faith and based on past experience, on the school board's commitment, the school board can not hide behind its status as a public entity to the detriment of Plaintiff.

### IV.   CONCLUSION

For the reasons stated herein, Defendant's motion for summary judgment as to Counts I and II of the complaint is **granted.** Defendant's motion for summary judgment as to Count III, promissory estoppel, is **denied**. An appropriate order follows this opinion

 S/ Dennis M. Cavanaugh  
Dennis M. Cavanaugh, U.S.D.J.

Date:         February __16__, 2011  
cc:            Counsel of Record  
              The Honorable Joseph A. Dickson, U.S.M.J.  
              File