NOT FOR PUBLICATION

UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

|  |  |
|---|---|
| ISOBUNKERS, LLC.<br>Plaintiff,<br><br>v.<br><br>BYRAM TOWNSHIP BOARD OF EDUCATION<br>Defendant | **Hon. Dennis M. Cavanaugh**<br><br>**OPINION**<br><br>Civil Action No. 09-cv-00607 (DMC)(JAD) |

DENNIS M. CAVANAUGH, U.S.D.J.:

This matter comes before the Court by Complaint of Plaintiff, ISOBunkers, LLC ("ISOBunkers" or "Plaintiff"), against Defendant Byram Township Board of Education ("Byram Township" or "Defendant"). This case concerns an alleged breach of an agreement between the parties pursuant to which Plaintiff agreed to supply Defendant with the fuel oil needs for schools in Defendant's school districts.

This Court conducted a non-jury trial in this matter on November 28 and 29, 2011. The trial was limited to the only issue remaining in this case: whether the Plaintiff is entitled to relief under a theory of promissory estoppel. This Opinion constitutes the Court's findings of fact and conclusions of law pursuant to Fed. R. Civ. P. 52(a). For the reasons stated herein, a finding in favor of Defendant will be entered.

1

I.     **BACKGROUND**

Plaintiff ISObunkers, LLC ("ISObunkers" or "Plaintiff") is a supplier of fuel oil to private and public entities. Plaintiff's Proposed Findings of Fact, ECF No. 43, ("Pl-PFF"),¶ 2. In the course of its business as a supplier of fuel oil, Plaintiff placed what are known as "fixed price" bids in response to requests made by entities seeking contracts for the provision of fuel oil. Pl-PFF ¶ 14. A fixed price bid requires a bidding company to calculate their costs and margin in presenting the bid, and once the bid is approved, the proposed price will be locked in. Pl-PFF ¶ 12-13. Pursuant to an approved bid, the supplier promises to provide the oil at the price as fixed. Id. As of the institution of this suit, ISObunkers had submitted approximately fifty (50) to sixty (60) firm-fixed bids over the course of its existence and had been successful on about thirty (30) of such bids. Pl-PFF ¶ 14. Upon acceptance of a bid, it was the practice of ISObunkers to immediately contact its broker to purchase the product necessary to fulfill the contract. Pl-PFF ¶ 15.

In or around 2002, ISObunkers contracted with Phoenix Petroleum Company ("Phoenix") to operate as the contracting entity to enter into ground fuels contracts on behalf of ISObunkers.[1] Pl-PFF ¶ 11. In or about 2002, Thomas Hagan ("Hagan"), Director of Marketing of Phoenix Petroleum, began to submit bids to Defendant Byram Township Board of Education ("Byram Township" or "Defendant") in its own name. Pl-PFF ¶38. Phoenix was successful in its first bid to Byram and was notified of its success by Byram Township's business administrator by telephone. Id. Phoenix thereafter continued to submit bids to Byram Township for the purchase of fuel supplies on an annual basis between 2002 and 2008. Pl-PFF ¶40.  Phoenix was the successful bidder on

---

[1] In or about 1993, ISObunkers entered into a joint venture with Phoenix Petroleum Company. Pl-PFF ¶ 9.  In 2001, the entities entered into a different business relationship whereby ISObunkers would finance Phoenix Petroleum's ground fuel business. Pl-PFF ¶ 10.

approximately five occasions during this period of time. Id. Upon receipt of each notification that it had placed the lowest bid, Phoenix would immediately purchase the futures contracts necessary to fulfill the request and lock in the proposed price. Pl-PFF ¶ 39. Over the course of the dealings between Byram Township and Phoenix, Hagan dealt with Byram Township's Business Administrator, William Bauer ("Bauer"). Pl-PFF ¶ 45. During their exchanges, Hagan advised Bauer of Phoenix's practice of securing futures contracts immediately upon notification that it had placed the lowest bid. Pl-PFF ¶ 41.

The instant dispute concerns the solicitation of bids by Defendant Byram Township for the period of July 1, 2008 to June 30, 2009 (the "2008 Bid"). Defendant sent notice to eight fuel oil suppliers requesting the submission of bids for the furnishing of fuel oil for a consortium of eleven schools in six school districts for the requested time period. Pl-PFF, ¶¶ 1, 3. Such bids were to be in the form of a "fixed-price bid." Pl-PFF ¶ 13. Defendant requested that the bids be submitted by August 6, 2008, at which time they would be publicly opened and read. Pl-PFF ¶ 3. The Bid invitation stated that the bids should be submitted with a signed bid form and that the bid prices were to be a fixed sum per gallon for the period of July 1, 2008 to June 30, 2009, with minimum deliveries of 3000 gallons. Pl-PFF ¶¶ 5-6.

Plaintiff was among the fuel oil suppliers who received the Byram Township bid invitation in 2008. Pl-PFF ¶ 3. For the 2008 Bid, Phoenix submitted a bid on behalf of ISObunkers.[2] Pl-PFF ¶ 23. The bid submitted by Phoenix contained language which was included in all of ISObunker's

---

[2] The bid in question was the first bid submitted by Phoenix to Byram Township on behalf of ISObunkers. Transcript of Trial Proceedings Vol. 1 at 36. All previous bids placed by Phoenix with Byram Township had been made under Phoenix's name. Transcript of Trial Proceedings Vol. 1 at 36.

bid packages to public entities:

> Because of the extreme volatility of the current oil market, ISObunkers reserves the right to modify this firm-fixed price bid at any time prior to commitment by the Byram Township BOE. A verbal telephone commitment is sufficient to lock in an agreement for the firm-fixed price.

Pl-PFF ¶¶ 19-20.

As planned, the bids were opened on Wednesday August 6, 2008. Pl-PFF ¶ 4. Hagan of Phoenix was notified by Bauer that Phoenix had placed the lowest bid. Pl-PFF ¶ 42; Defendant's Proposed Findings of Fact, ECF No. 44 ("Def-PFF"), ¶25. Phoenix then notified ISObunkers that it had placed the lowest bid and was requested to fix the price submitted in the bid.[3] Pl-PFF ¶ 24. On the same day, Phoenix forwarded an email to Bauer to confirm that ISObunkers would accept the award and would lock in the price.[4] Pl-PFF ¶¶ 26, 42. ISObunkers immediately purchased twelve futures contracts at a cost of approximately $1.7 million. Pl-PFF ¶¶ 28-29.

Subsequent to the notification and purchase of the futures contracts Hagan was notified by Bauer on August 13, 2008 that Phoenix's bid had been challenged based on "extra verbiage" in the bid package that did not comply with the bidding process. Def-PFF ¶ 29; Transcript of Trial Proceedings Vol. 1 at 8. The challenge was directed to the conditional language included in Phoenix's bid that allowed ISObunkers to modify the fixed price bid at any time prior to acceptance. Pl-PFF ¶ 19. That same day, Defendant sent an e-mail to all those who had bid on August 6, 2008

---

[3]Powell testified that he was notified by Phoenix that although Phoenix was not the low bidder, it was awarded the contract due to conflicting language in other bids that had been submitted. Transcript of Trial Proceedings Vol. 1 at 22.

[4]According to the trial testimony of Powell, upon informing Phoenix that it was the low bidder, Bauer requested a confirmation that the price would be locked in. Transcript of Trial Proceedings Vol. 1 at 22-23. Bauer, however, testified that he did not recall requesting that Hagan send him an email to lock in the price. Transcript of Trial Proceedings Vol. 2 at 13-14.

and informed them that, due to the complaint, the bidding process would be repeated, and the results of the August 6 process were void. Ex. D-6. Also on the same day, Hagan notified Robert Powell that Byram Township "was cancelling the contract." Def-PFF ¶ 7. The contract was then re-bid and the contract was awarded to a competitor of ISObunkers. Transcript of Trial Proceedings Vol. 1 at 32.

On August 15, 2008, ISObunkers sold the futures contracts for a net loss of approximately $101,000.00. Pl-PFF ¶ 31. Plaintiff also submitted that it lost an expected profit of approximately $200,000 which would have been earned had they been allowed to fulfill the contract as originally bid. Pl-PFF ¶ 33.

ISObunkers instituted the instant suit on the grounds of breach of contract, breach of the implied covenant of good faith and fair dealing, and promissory estoppel. Pl.'s Compl. ECF No. 1. On February 16, 2011, by way of Defendant's motion for summary judgment, this Court dismissed Counts I and II of Plaintiff's Complaint. ECF No. 23. The Counts were dismissed on the grounds that, as a matter of law, no contract was ever formed. This holding was premised upon the fact that Plaintiff was specifically instructed in the bid packet that familiarity with applicable law is incumbent on the bidder. Plaintiff was therefore unequivocally charged with knowledge that, under New Jersey law, the contract in question could not issue without a formal resolution of the Board of Education. The only issue that remains for resolution is Plaintiff's claim for promissory estoppel. Because this Court finds that any reliance that Plaintiff placed on the representations made by Defendant regarding Phoenix's bid was not reasonable, a finding in favor of Defendant must be entered.

**II.    LEGAL STANDARD**

A. New Jersey Public School Contracts Law

New Jersey's Public School Contracts Law, N.J.S.A. 18A:18A-4 states in relevant part "[e]very contract for the provision or performance of any goods or services, the cost of which in the aggregate exceeds the bid threshold, shall be awarded only by resolution of the Board of Education to the lowest responsible bidder after public advertising for bids and bidding therefor, except as provided otherwise in this chapter or specifically by any other law." Moreover, N.J.S.A. 18A:18A-40 states "[a]ll board of education contracts for the provision or performance of goods or services shall be in writing." The law further provides in N.J.S.A. 18A:18A-4.5 that "[a]ward of a contract shall be made by resolution of the Board within 60 days of the receipt of the proposals" unless there is consent "for such longer period as may be agreed."

B. Promissory Estoppel

"Promissory estoppel is made up of four elements: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment." Toll Bros., Inc. v. Board of Chosen Freeholders of Burlington, 194 N.J. 223, 254, 944 A.2d 1 (2008) (citing Lobiondo v. O'Callaghan, 357 N.J.Super. 488, 499, 815 A.2d 1013 (App.Div.2003)).

III.   DISCUSSION

As previously stated, the only issue that remains for resolution is whether Plaintiff is entitled to a claim of promissory estoppel on the facts as established. At trial, Plaintiff was required to establish the necessary elements to a valid claim for promissory estoppel: (1) a clear and definite promise; (2) made with the expectation that the promisee will rely on it; (3) reasonable reliance; and (4) definite and substantial detriment. This Court finds that Plaintiff has

failed to prove reasonable reliance necessary for a claim of promissory estoppel and therefore find for the Defendant.

Pursuant to the language of the Notice to Bidders provided in Byram Township's solicitation of the 2008 Bid, Plaintiff was charged with notice of all applicable laws relevant to the transaction. Ex. J-1.  The applicable law clearly states that a contract "shall be awarded <u>only by resolution of the Board of Education</u>." <u>N.J.S.A.</u> 18A:18A-4 (emphasis added).   As such, Plaintiff was charged with notice that a binding contract could not precede the passage of a resolution of the Board of Education.  Moreover, Plaintiff's agent testified to knowledge of the statute, as well as knowledge of the fact that intervening events could disrupt the formation of a contract subsequent to the Township's declaration of the lowest bidder.  Mr. Hagan testified that he was aware that the Byram Township Board of Education passed resolutions regarding contracts for the provision of fuel oil, but understood such resolutions to be "more or less a formality" which made the contract official. Transcript of Trial Proceedings Vol 1. at 57.   Hagan further testified that at the time the futures contracts were purchased he was aware that there was not yet an official contract. Transcript of Trial Proceedings Vol. 1 at 57.  Finally, Hagan testified that he was aware that the low bid could be protested, but that he assumed that after the bid price was fixed, such protests would be denied. Transcript of Trial Proceedings Vol. 1 at 58.  This Court finds that, regardless of the conclusions drawn by Plaintiff or its agent, the knowledge attributable to Plaintiff precludes this Court from finding that Plaintiff was reasonable in its purchase of the futures contracts.

This Court is mindful of the pattern developed by Plaintiff in the course of its dealings with Defendant and others, as well as the volatile nature of the fuel market at the time.[5] In light of the foregoing, Plaintiff had established its own pattern of practice in which it felt compelled to, and did in fact purchase futures contracts upon notification that it was the lowest bidder. However, this pattern was developed by Plaintiff and can not be attributed to any promise made by Defendant on which it intended Plaintiff to rely.  This was a business decision made by Plaintiff alone and it is of no moment that Defendant was aware of this practice.  The bidding procedure and applicable law was clear to both Plaintiff and Defendant, and awareness of Plaintiff's course of conduct alone cannot give rise to a clear and definite promise on the part of Defendant. SGS U.S. Testing Co., Inc. v. Takata Corp., No. 9-6007, 2010 WL 3035742, at *8 (D.N.J. Aug. 3, 2010).  Plaintiffs were never advised by Defendant that compliance with the applicable laws was not necessary. See Williams Scotsman, Inc. v. Garfield Bd. of Educ., 379 N.J. Super. 51, 61 (2005). To the contrary, Plaintiff's agent testified to prior dealings with Defendant in which the law was specifically honored and complied with.  Transcript of Trial Proceedings Vol. 1 at 57

The law is clear that a binding contract could not be formed until a formal resolution is passed by the Board.  While Plaintiff may have thought that the Board Resolution was a mere formality or rubber stamp, the law clearly indicates otherwise and Defendant made no promise to

---

[5]Mr. Powell testified that most customers to whom fixed bids were submitted would advise ISObunkers that the bid price should be fixed, while other customers would direct them not to fix the price until the board behind the particular entity confirmed the purchase order. Transcript of Trial Proceedings Vol. 1 at 42.  Here, there is differing testimony regarding whether ISObunkers was directly requested to fix the bid price.

the contrary.  Plaintiff and its agents were well aware of the bidding procedure and were at the very least charged with knowledge that a binding contract could not be entered into prior to the passage of a resolution of the board.  Accordingly, this Court finds that Plaintiff has failed to establish a cause of action under a theory of promissory estoppel and finds for Defendant.

## IV.  CONCLUSION

For the reasons stated herein, this Court concludes that Plaintiff has failed to establish an entitlement to relief based upon the theories advanced and the facts as established. Judgment is therefore entered in favor of Defendant Byram Township Board of Education.

    S/ Dennis M. Cavanaugh

Dennis M. Cavanaugh, U.S.D.J.

Date:           May  18 , 2012
cc:             Counsel of Record
                The Honorable Joseph A. Dickson, U.S.M.J.
                File